UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

MICHAEL WILLIAM LADEWIG,

                Plaintiff,

v.                                                    Case No. 23-cv-1386-pp

AMANDA PEREZ, DR. PHILLIP WHEATLEY,
BRYAN ROYCE and TYLER COENEN,

                Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING THE FILING FEE (DKT. NO. 2) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

---

Michael William Ladewig, who is incarcerated at Oshkosh Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants failed to provide him timely medical treatment for a broken finger. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then

must pay the balance of the $350 filing fee over time, through deductions from his prison trust account. Id.

On October 27, 2023, the court ordered the plaintiff to pay an initial partial filing fee of $31.93. Dkt. No. 6. The court received that fee on November 6, 2023. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

## II.  Screening the Complaint

### A.  Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to

relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cnty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.   The Plaintiff's Allegations

The complaint names as defendants Nurse Amanda Perez, Dr. Phillip Wheatley, Dr. Bryan Royce and Tyler Coenen. Dkt. No. 1 at 1–2. Perez and Wheatley work at Oshkosh Correctional Institution, but it appears that Royce and Coenen work at Mercy Hospital in Oshkosh, Wisconsin. Id.

The plaintiff alleges that on July 4, 2023, he broke the tip of his right middle finger while playing basketball. Id. at 2. The plaintiff went to speak with

3

medical staff right away and saw Perez, who examined his finger and told him "it's not broke." Id. She prescribed the plaintiff ice and ibuprofen and told him the Health Services Unit (HSU) would follow up with him the next day. Id.

Two days later, after the plaintiff requested a follow-up visit with the HSU, he again saw Perez about his finger. Id. The plaintiff alleges that she "was very surprised at how sw[o]ll[e]n and black [and] blue [his] finger had become." Id. She called Dr. Wheatley to the exam room to look at the plaintiff's finger. Id. at 2–3. Dr. Wheatley ordered an x-ray of the finger, but the plaintiff says he "was not sent out to E.R. nor was x-ray tech called out to [the] Institution." Id. The plaintiff says he had to wait util July 10, 2023 for an x-ray tech to come to Oshkosh. Id. On July 11, 2023, the HSU called the plaintiff about the results of the x-ray, which showed that the plaintiff's finger was broken. Id. HSU staff provided him a metal splint and a roll of tape. Id. The plaintiff says this was "only a temporary method for 24 to 72 hours till [*sic*] a person sees a[n] OSMS doctor." Id.

The plaintiff says that he was referred to Dr. Royce, who the plaintiff says is an OSMS. Id. (The court infers that this means Orthopedic and Sports Medicine Specialist.) The plaintiff saw Dr. Royce at Mercy Hospital on July 24, 2023. Id. Dr. Royce told the plaintiff that his break was what athletes call "mallet finger." Id. He referred the plaintiff to a hand specialist. Id. The plaintiff saw that specialist, defendant Coenen "(OT)," about two weeks later. Id. During that August 9, 2023 appointment, Coenen made "a custom finger splint" for

the plaintiff's injury. Id. The plaintiff notes it had been five weeks since his injury, and he says that mallet finger "only takes 4 to 6 weeks to heal." Id.

The plaintiff says his finger has since healed, but it took thirteen weeks and left his finger deformed. Id. He says his finger is still painful and sore, and he has "trouble with everyday activities" like brushing his teeth, using the restroom, tying his shoes and gripping with his right hand. Id. The plaintiff says that "[n]othing in [his] situation was done in a timely manner." Id.

The plaintiff says he "would like [his] finger fixed." Id. at 4. He also seeks damages but says the amount and type "can be spoke about at a later time." Id. He also asks that the defendants "stop hesitateing [sic] with inmates doctors appointments and start scheduling appointment's [sic] in a reasonable amount of time." Id.

C. Analysis

The court reviews the plaintiff's allegations regarding the denial of proper medical care under the Eighth Amendment. Gabb v. Wexford Health Sources, Inc., 945 F.3d 1027, 1033 (7th Cir. 2019) (quoting Pyles v. Fahim, 771 F.3d 403, 408 (7th Cir. 2014)) (internal quotations omitted). To state a valid Eighth Amendment claim, the plaintiff must allege both that he "suffered from an objectively serious medical condition" and that the defendants were "deliberately indifferent to that condition." Petties v. Carter, 836 F.3d 722, 728 (7th Cir. 2016) (*en banc*) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." Farmer, 511 U.S. at 835. A prison official shows deliberate

indifference when she "realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." Perez, 792 F.3d at 776.

The plaintiff alleges a series of delays in receiving treatment for his broken finger. "A delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." Arnett v. Webster, 658 F.3d 742, 753 (7th Cir. 2011) (citing McGowan v. Hulick, 612 F.3d 636, 640 (7th Cir. 2010)). The length of delay that is tolerable "'depends on the seriousness of the condition and the ease of providing treatment.'" Id. (quoting McGowan, 612 F.3d at 640).

The complaint alleges that the plaintiff broke the tip of his middle finger, which took thirteen weeks to heal. He alleges that the treatment he received at the prison and the hospital caused the excessive healing time and resulted in his finger being deformed, painful and sore. The alleged delays are not inherently unreasonable. The plaintiff says he had to wait two days for a follow-up appointment with Nurse Perez, six days for an x-ray, two weeks to see orthopedist Dr. Royce and two more weeks to see a hand specialist. A non-incarcerated person might face the same waiting periods (or longer) to receive specialized treatment like an x-ray or an appointment with an orthopedist or hand specialist. But the court must accept the allegations in the complaint as true at this early stage of the litigation. The complaint alleges that because of the delays, the plaintiff's finger did not heal properly and now is deformed and causes him difficulty with daily life. These allegations satisfy the objective

standard under cases like Arnett. See also Roe v. Elyea, 631 F.3d 843, 861 (7th Cir. 2011) (noting that "a broad range of medical conditions . . . including a dislocated finger . . . [and] a broken wrist" may be sufficient to satisfy the objective element of an Eighth Amendment claim).

The plaintiff alleges that each of the defendants was personally responsible for treating him and delaying his treatment. Nurse Perez first saw him, insisted his finger was not broken and eventually referred him to Dr. Wheatley. Dr. Wheatley ordered the x-ray, which the plaintiff says took an inordinate amount for time for him to receive. Dr. Royce diagnosed the plaintiff with mallet finger and referred him to a specialist, but the plaintiff says he also had to wait too long to see the specialist. Coenen, the hand specialist, created a custom splint for the plaintiff's finger, which then healed improperly.

The allegations against Perez satisfy the subjective component of an Eighth Amendment claim. The plaintiff says she rejected his claim that his finger was broken and provided only ice and ibuprofen before reversing course two days later when the plaintiff showed her his now swollen and bruised finger, which "surprised" her. Dkt. No. 1 at 2. Those allegations suggest Perez was indifferent to the plaintiff's injury when she first saw him and provided inadequate treatment. The court will allow the plaintiff to proceed against Perez.

The plaintiff alleges that Dr. Wheatley ordered an x-ray and referred the plaintiff to Dr. Royce. Those actions show a reasonable course of treatment and do not suggest deliberate indifference. But the plaintiff says Dr. Wheatley did

7

not *immediately* order the x-ray, so he had to wait six days before undergoing one. He says he also did not see Dr. Royce for two weeks and had a temporary splint on his finger in the meantime, even though the splint was designed to last only a few days. It is possible that these were the earliest times available for the x-ray and the examination with Dr. Royce. It also is possible that Dr. Wheatley had no control over when the plaintiff would receive the x-ray or see Dr. Royce and could only order those treatments. Either of those scenarios would suggest that Dr. Wheatley was not subjectively responsible for the delays and may not be held liable for them. But again accepting the allegations as true, the court finds that, at this early stage and with the information provided, the complaint states a claim against Dr. Wheatley for unnecessarily delaying the plaintiff's x-ray and his visit with Dr. Royce.

The plaintiff saw Dr. Royce on July 24, 2023 and Dr. Royce referred him to a hand specialist. As with the allegations against Dr. Wheatley, this course of treatment does not suggest deliberate indifference. But the plaintiff again says he had to wait two weeks to see the specialist, which he says contributed to his finger not healing properly. Although the court suspects that this is the earliest that Coenen was available, the court must accept the allegations as true and will allow the plaintiff to proceed against Dr. Royce for unnecessarily delaying his referral appointment with Coenen.

The plaintiff alleges that Coenen made him a custom splint for his finger to help it heal. He says that by then, his finger had been broken for five weeks, and mallet finger takes only four-to-six weeks to heal. He says it took thirteen

weeks for his finger to heal—eight weeks after Coenen made him the custom finger splint. This suggests that Coenen may not have provided proper care for the plaintiff's finger, which caused additional pain and suffering and led to the deformity in the plaintiff's finger. The court again accepts these allegations as true and will allow the plaintiff to proceed on an Eighth Amendment claim against Coenen.

The court notes a concern about defendants Royce and Coenen. The plaintiff says that these defendants work at Mercy Hospital, which is a private hospital run by a private organization. But a plaintiff may bring a lawsuit under §1983 only against *government* officials or employees or individuals who acted "under color of state law." Rodriguez v. Plymouth Ambulance Serv., 577 F.3d 816, 822 (7th Cir. 2009). A private party may be found to act under color of state law only when the party "acted together with or . . . obtained significant aid from state officials" and did so to such a degree that its actions may properly be characterized as "state action." Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982).

The court cannot determine from the complaint whether defendants Royce and Coenen were state actors when they treated the plaintiff. It is possible that Oshkosh Correctional Institution contracted with the hospital to provide care for incarcerated persons at the prison. That might provide a basis for the court to conclude that Royce and Coenen were state actors when they treated the plaintiff in July and August 2023. Although it is unclear from the complaint whether the court may consider Royce and Coenen state actors for

purposes of this lawsuit, the plaintiff "can[not] be charged fairly with knowing" whether they rendered treatment under a a contract between the hospital and the prison, which could make them state actors. See Rodriguez, 577 F.3d at 830. The court will assume, for the purpose of screening only, that Royce and Coenen were acting under color of state law when they treated the plaintiff and will allow the plaintiff to proceed on his claims against them. Nothing in this decision precludes the defendants from seeking to dismiss Royce and Coenen if they have evidence showing that they were not state actors when they treated the plaintiff.

As a final note, the plaintiff seeks an order directing the defendants to provide all incarcerated persons prompt medical treatment and offsite appointments. But the plaintiff cannot represent the interests of any other person in this lawsuit. He may seek relief for his injuries only and not for the injuries that any other incarcerated person suffered or the treatment that they received. See Lewis v. Casey, 518 U.S. 343, 349–50 (1996); Massey v. Helman, 196 F.3d 727, 739–40 (7th Cir. 1999).

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

Under an informal service agreement between the Wisconsin Department of Justice and the court, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on defendants Amanda Perez and Dr. Phillip Wheatley. Under the informal service

10
Case 2:23-cv-01386-PP   Filed 11/22/23   Page 10 of 13   Document 7

agreement, the court **ORDERS** those defendants to respond to the complaint within 60 days.

The court **ORDERS** the U.S. Marshals Service to serve a copy of the complaint and this order on defendants Bryan Royce and Tyler Coenen at Mercy Hospital in Oshkosh, Wisconsin, under Federal Rule of Civil Procedure 4. Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). Although Congress requires the court to order service by the U.S. Marshals Service, it has not made any provision for either the court or the U.S. Marshals Service to waive these fees. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2), (a)(3). The U.S. Marshals Service will give the plaintiff information on how to remit payment. The court is not involved in collection of the fee. The court **ORDERS** defendants Royce and Coenen to file a responsive pleading to the complaint.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$318.07** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the

transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Oshkosh Correctional Institution.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and completing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the

---

[1] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

clerk of court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin this 22nd day of November, 2023.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**